IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

ADEKUNLE OJELADE,
        Plaintiff,

vs.                                        5:06cv89/RS/MD

LIBERTY MUTUAL, et al.
        Defendants.

---

## REPORT AND RECOMMENDATION

This cause is before the court upon defendants' motion for summary judgment and supporting affidavits. (Doc. 26, 27, 28 & 29). Plaintiff was directed to respond, and he filed a "motion for declaratory judgment by plaintiff's submission to jurisdiction of district court and material facts of case. and plaintiff's response to defendants' statement of undisputed material facts."  (Doc. 29).

Procedural Background

Plaintiff Adekunle B. Ojelade initially filed this case in the Circuit Court in and for Escambia County Florida in March of 2006[1] against Liberty Mutual and the Law Office of Amy Warpinski.  His original pleading, titled "Racial Discrimination by violation of Fiduciary Responsibility and Expungement of Rights of Workmans' Compensation Financial Benefits and Statutory Notification as Deliberate and Direct Harm" (henceforth "complaint") was removed to this court on April 25, 2006.  In the complaint, plaintiff alleges that he was injured in an automobile accident on September 22, 2005 during the course of his

---

[1]  A copy of the complaint and exhibits to the complaint is appended as exhibit A to the notice of removal. (Doc. 1).  A certified copy of all state court documents was separately filed on the same date.  (Doc. 6).

employment with the Children's Home Society, which is not a party to this action.   He appears to claim that his workers' compensation benefits were terminated in November of 2005 by defendant Liberty Mutual, his employer's workers' compensation carrier, without notice. (Complaint ¶ 4).  He alleges that Liberty Mutual made unspecified false statements about his conduct to his employer, did not investigate allegedly unfair treatment of the plaintiff by Dr. Rohan, instigated an investigation by a loss adjuster without notice to him, and "unfairly handled" his claim.  (Complaint ¶ 5).  He maintains that this was evidence of race and national origin discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e as amended by the Civil Rights Act of 1991 and the Immigration Reform and Control Act of 1986, 8 U.S.C. § 1101.  (Complaint ¶ 6).  Additionally, plaintiff contends that Liberty Mutual violated its fiduciary obligation to him.  (Complaint ¶ 7).  He seeks $200,000 in compensation for racial discrimination and prejudice based on national origin discrimination by defendant Liberty Mutual.   (Complaint ¶ 7).

Appended to the complaint are various records including medical records, a return to work form signed by plaintiff's physician releasing him to work effective November 9, 2005, and correspondence between plaintiff and Liberty Mutual.

In their motion for summary judgment, defendants contend that they are entitled to summary judgment on several grounds.  They contend that plaintiff has no standing to bring a claim under Title VII or the Immigration Reform and Control Act against Liberty Mutual because neither defendant has ever been plaintiff's employer.  Defendants also maintain that plaintiff may not bring claims against his employer's insurance carrier in any other court other than before a Judge of Compensation Claims which has jurisdiction over plaintiff's case.  Finally, defendants claim that Liberty Mutual, as the insurance carrier for plaintiff's employer, has no fiduciary responsibility to him.

Undisputed Facts

This case is unusual in that the pro se plaintiff has not offered any factual information via affidavit or other sworn form of proof.  Even his complaint is not swron under the penalty of perjury.  There are three affidavits in the record that were submitted

by the defendants in support of their motion for summary judgment, and they are unrefuted.

Plaintiff was an employee of the Children's Home Society ("CHS") when he sustained a work related injury on September 22, 2005.  (Doc. 27 at ¶¶ 5, 6).  As proof of plaintiff's employment, Cynthia Radcliffe, the claims adjuster for Liberty Mutual who handles plaintiff's workers' compensation claim, offers plaintiff's I-9, Application for Employment, a pay stub showing year to date totals from October 2005, a letter from plaintiff to CHS identifying CHS as his employer, his unemployment claim form identifying CHS as his employer, a letter from CHS informing him that Liberty Mutual was its workers' compensation carrier, and a letter to plaintiff from Liberty Mutual.  (Doc. 27 at ¶ 8, exh. 3-8, 10).  As an employee of CHS, plaintiff was qualified to receive workers' compensation benefits from its carrier, defendant Liberty Mutual, while he was out of work following the accident.  (Doc. 27 at ¶¶ 6, 7).  On November 9, 2005, plaintiff's treating physician authorized him to return to light duty, and Liberty Mutual sent plaintiff a letter explaining his benefits to him.  (Doc. 27 at ¶ 10, 11 exh. 9, 10).  This correspondence stated that his temporary partial disability benefits would continue until "(a) [his] doctor states that [he has] reached Maximum Medical Improvement from your injury; (b) [he has] received 104 weeks of either temporary total or temporary partial disability benefits or both combined; or (c) [he is] earning 80% or more of the wages [he was] earning at the time of [his] accident."  (Doc. 27, exh. 10).  On January 6, 2006, plaintiff sent a letter to Liberty Mutual requesting reinstatement of Permanent Total Disability and Permanent Total Supplemental Benefits. (Doc. 27, ¶ 12, exh. 12).  On July 7, 2006, plaintiff filed a Petition for Benefits seeking Temporary Total Disabilty (TTD) Benefits or Temporary Partial Disability (TPD) Benefits. (Doc. 27, ¶ 13, exh. 13).  On August 2, 2006, the Employer/Carrier filed a response to this petition stating that plaintiff was not entitled to TTD, and that he was also not entitled to TPD because he had refused light duty work. (Doc. 27, ¶ 14, exh. 14).

Debra Waldstein, the Vice President and Manager of Employee Relations for Liberty Mutual states in her affidavit that she conducted a search of Liberty Mutual's employee records from 1989 through the present.  (Doc. 28, ¶¶ 4, 6).  She notes that Amy Warpinski

was hired on June 3, 1985 as Liberty Mutual's in-house counsel and is a full time employee of Liberty Mutual. (Doc. 28, ¶ 7).  She further states that Adekunle B. Ojelade has never been hired by Liberty Mutual, is not a current employee of the company, has never been interviewed, hired or paid wages by the company, has never provided services of any kind to or on behalf of the company and has never received compensation in exchange for such services.  (Doc. 28, ¶¶ 8, 10, 11, 12).  The only payments made by Liberty Mutual to the plaintiff Ojelade were those disbursed as workers' compensation benefits, and the only relationship between plaintiff and the company was that of workers' compensation claimant and carrier.  (Doc. 28, ¶¶ 13 & 14).  Finally, Ms. Waldstein avers that Liberty Mutual is a separate organization and entity from the plaintiff's employer, and that it is not involved in any way in the management, direction, control or employment of CHS employees.  (Doc. 28 ¶ 15).

Lastly, the affidavit of Amy Warpinski sets forth that she is a full time employee of Liberty Mutual, who is paid by and receives employee benefits from Liberty Mutual and that the company pays all applicable federal and state taxes on her wages.  (Doc. 29).  She states that the only relationship that has existed between the plaintiff and herself is that of workers' compensation claimant and in-house counsel for Liberty Mutual.  (Doc. 29).

Because plaintiff has provided no evidence in contravention of these facts, the court accepts them as undisputed.


LEGAL ANALYSIS

Summary Judgment Standard

A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."Rule 56(c), Fed.R.Civ.P. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the

burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986); see also *Morisky v. Broward County*, 80 F.3d 445, 447 (11th Cir. 1996).

However, summary judgment is improper "if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir. 1995). An issue of fact is "material" if it might affect the outcome of the case under the governing law. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986). It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. See *id.*; see also *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 552 (1986).

Conclusory allegations based on subjective beliefs are insufficient to create a genuine issue of material fact. See *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000); *Ramsey v. Leath*, 706 F.2d 1166, 1170 (11th Cir. 1983). On a summary judgment motion, the record and all reasonable inferences that can be drawn from it must be viewed in the light most favorable to the non-moving party. *Whatley v. CNA Ins. Cos.*, 189 F.3d 1310, 1313 (11th Cir. 1999).


Plaintiff's Standing to Sue under Title VII

Defendant Liberty Mutual

Defendant Liberty Mutual contends that plaintiff is neither a current nor a former employee, and therefore he has no standing to bring his Title VII claim against it.  Title VII makes it "an unlawful employment practice for an employer ⋀⋀to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . race . . . or national origin." 42 U.S.C. § 2000e-2(a). An "employer" under Title VII is "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." 42 U.S.C. §

2000e(b).  An employee is "an individual employed by an employer." 42 U.S.C. § 2000e(f).
Absent an employer-employee relationship as defined under the statute, a Title VII claim
does not lie.

Determining whether an employee-employer relationship exists involves a two-step
process, and the burden of proving this relationship falls on the plaintiff.  See *Lyes v. City
of Rivera Beach Florida,* 166 F.3d 1332, 1340-41 (11th Cir. 1999); *Deal v. State Farm
County Mutual Insurance Co. of Texas,* 5 F.3d 117, 118 (5th Cir. 1993).  First, plaintiff must
establish that the defendant fits within the statutory definition of an employer set forth
above.  In this case, the status of Liberty Mutual, a large, international employer with
33,000 employees is not reasonably in dispute.  (Doc. 28 at ¶ 5).

Next, plaintiff must show that an "employment relationship" exists between the
parties.  See *Deal, supra*; *Cuddeback v. Fla. Bd. Of Educ.*, 381 F.3d 1230 (11th Cir. 2004);
*Cobb v. Sun Papers, Inc.*, 673 F.2d 337 340 (11th Cir. 1982).  To analyze the parties'
relationship, courts use some variation of a two part "economic realities/common law
control test."   See *Deal, supra; Lyes, supra; Cuddeback, supra; Cobb, supra.*  The
economic realities portion of the test requires the court to consider such things as whether
the alleged employer paid the employee's salary, withheld taxes, provided benefits and set
terms and conditions of employment.  The fewer economic connections that exist, the more
tenuous the case for having established an  "employment" relationship is considered to be.
The common law control test considers whether and to what extent the defendant has the
right to control the employee's conduct, for instance the right to hire and fire, the right to
supervise the employee and the right to set the employee's work schedule.  See *Deal,
supra; Cuddeback, supra.*  Plaintiff has shown neither that the defendants exert any
economic influence nor that they exercise any control.  In this case, the record reflects that
the only economic connection that existed between the plaintiff and Liberty Mutual was that
of workers' compensation claimant and carrier.  It was the Children's Home Society, and
not Liberty Mutual, that interviewed, hired, paid wages and compensation to the plaintiff.
Likewise, Liberty Mutual was in no way responsible for hiring and firing the plaintiff, setting
his work schedule, or providing daily supervision.  The record clearly reflects that the

defendant was a workers' compensation insurance carrier and plaintiff was a claimant, a relationship that is not governed by Title VII.  Because plaintiff has not established an employer-employee relationship between himself and Liberty Mutual, he has no standing to sue under Title VII.

    <u>Amy Warpinski</u>

    Plaintiff's claim against Amy Warpinski fails for the same reason.  The record reflects that she is employed full time by Liberty Mutual as its in-house counsel and is handling the defense of plaintiff's workers' compensation claim against Liberty Mutual and CHS.  (Doc. 29 at ¶¶ 6-8).  Regardless of whether Ms. Warpinski is properly considered an agent of Liberty Mutual, because plaintiff has failed to show an employment relationship with Liberty Mutual, he has no standing to bring a Title VII action against Ms. Warpinski or anyone considered to be an agent of that company.  Therefore, both defendants are entitled to summary judgment on plaintiff's Title VII claims against them.


<u>Plaintiff's Standing to Bring a Claim under the Immigration Reform and Control Act</u>

    The Immigration Reform and Control Act of 1986 ("IRCA") prohibits employers from hiring, recruiting, referring for a fee, or retaining undocumented workers and those who are not authorized to work in the United States.  8 U.S.C. § 1324a.  It also prohibits discrimination in employment practices based on national origin or citizenship status.  8 U.S.C. § 1324b.  The IRCA applies to employers with four or more employees.  8 U.S.C. § 1324b(a)(2).  Any individual who alleges a violation of the provisions of IRCA may file a charge with either the Special Counsel, or the EEOC, as appropriate.  8 U.S.C. § 1324b(b)(1) and (2).  For the reasons stated in the preceding sections, plaintiff has not established that either Liberty Mutual or Amy Warpinski was his employer within the meaning of the statute.  Therefore, he also has no standing to bring a claim under the IRCA, and defendants are entitled to summary judgment with respect to this claim.

Plaintiff's state law claims

Plaintiff's remaining claims regarding the administration of his workers' compensation claim and an alleged breach of fiduciary duty arise under Florida state law. The court has supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367. However, under *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), "it is within the district court's discretion to exercise pendent jurisdiction over state law claims if the court has jurisdiction over a substantial federal claim and the federal and state law claims 'arise out of the same nucleus of operative facts and are of such a nature that a plaintiff would be expected to try them all in the same proceedings.'" *Edwards v. Okaloosa County*, 5 F.3d 1431, 1433 (11th Cir. 1993) (quoting *Roper v. Edwards*, 815 F.2d 1474, 1477 (11th Cir.1987)).  Pendent jurisdiction is a "doctrine of discretion," that need not be exercised in every case and is not a plaintiff's right.  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S.Ct. 614, 619, 98 L.Ed.2d 720 (1988) (quoting Gibbs, 383 U.S. at 726, 86 S.Ct. at 1139).  *Gibbs* lists four factors a district court should consider in exercising discretionary pendent jurisdiction: judicial economy, convenience, fairness, and comity. 383 U.S. at 726-27, 86 S.Ct. at 1139; see also *Carnegie-Mellon*, 484 U.S. at 350, 108 S.Ct. at 619.  State claims should ordinarily be dismissed if all federal claims are eliminated before trial. *Edwards*, 5 F.3d at 1433 (citing *Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139).  "However, the Supreme Court has also noted that this is not a mandatory requirement; it is simply a recognition that when all federal claims are eliminated before trial, the Gibbs factors will ordinarily point toward dismissing the state claims as well." *Edwards*, 5 F.3d at 1433 (citing *Carnegie-Mellon*, 484 U.S. at 350 n. 7, 108 S.Ct. at 619 n. 7.).  Indeed, the Eleventh Circuit "encourage[s] district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial."  *Raney v. Allstate Ins. Co.,* 370 F.3d 1086 (11th Cir. 2004) (*citing L.A. Draper & Son v. Wheelabrator-Frye, Inc.*, 735 F.2d 414, 428 (11th Cir. 1984)); see also *Hicks v. Moore*, 422 F.3d 1246 n.8 (11th Cir. 2005) (consideration of remaining state claims "discretionary").  Therefore, because defendants are entitled to summary judgment as a matter of law on

plaintiff's federal claims, the plaintiff's remaining claims involving matters of exclusively state law should be dismissed without prejudice to their reassertion in the proper forum.

Accordingly, it is respectfully RECOMMENDED:

Defendants' motion for summary judgment (doc. 26) be GRANTED with respect to plaintiff's claims against them under Title VII and the IRCA;

Defendants' motion for summary judgment (doc. 26) be DENIED with respect to plaintiff's state law claims regarding the handling of his workers' compensation claim and his claim of breach of fiduciary duty, and that all state law claims be dismissed without prejudice;

Plaintiff's motion for declaratory judgment by plaintiff's submission to jurisdiction of district court and material facts of case (doc. 35) be DENIED; and

The clerk be directed to enter judgment accordingly and to close the file.

DONE AND ORDERED this 16th day of February, 2007.


/s/ *Miles Davis*

**MILES DAVIS
UNITED STATES MAGISTRATE JUDGE**


**<u>NOTICE TO THE PARTIES</u>**

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon the magistrate judge and all other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**